UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 22 B 13205 |
| 1600 HICKS ROAD LLC, | ) | |
| | ) | |
| Debtor. | ) | Chapter 11 |
| | ) | |
| _____ | ) | |
| | ) | |
| 1600 HICKS ROAD LLC, | ) | |
| | ) | Adv. No. 23 A 16 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| EH NATIONAL BANK, | ) | Judge David D. Cleary |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

The question "is whether the injunction sought by [the Debtor] is likely to enhance the prospects for a successful resolution of the disputes attending its bankruptcy." *Caesars Ent. Operating Co., Inc. v. BOKF, N.A.* (*In re Caesars Ent. Operating Co., Inc.*), 808 F.3d 1186, 1188 (7th Cir. 2015) ("*Caesars Circuit*").  And, if so, whether denial of the requested injunction will "endanger the success of the bankruptcy proceedings[.]"  *Id*.  If the answer to both questions is yes, then an injunction, pursuant to section 105, is "appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105(a).  *See Caesars Circuit*, 808 F.3d at 1188-89; *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 162-63 (7th Cir. 1994).  Here, the answer to both questions is "yes."

## I.    INTRODUCTION

This matter comes before the court on the motion of 1600 Hicks Road LLC ("Plaintiff" or "Debtor") for a preliminary injunction ("Motion") to halt efforts by EH National Bank

("Defendant" or "Bank") to enforce a deficiency judgment against Anam Qadri ("Anam") and Saleem Qadri ("Saleem") (collectively, the "Qadris").  Defendant filed a response to the Motion ("Response"), and the court heard argument from the parties.  The court offered the parties an opportunity to hold an evidentiary hearing, which they declined.

Having reviewed the papers filed and considered the arguments of the parties, the court will grant the Motion to the extent it seeks a preliminary injunction.

## II.   JURISDICTION

This court has jurisdiction to stay actions in other courts, including "suits to which the debtor need not be a party but which may affect the amount of property in the bankrupt estate," *Zerand–Bernal*, 23 F.3d at 162, or "the allocation of property among creditors," *Matter of Memorial Estates, Inc.*, 950 F.2d 1364, 1368 (7th Cir.1991) (quotation omitted).  "To protect this jurisdiction, the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title, 11 U.S.C. § 105(a), including a stay."  *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1998) (quotation omitted).  *See also Fogel v. Zell*, 221 F.3d 955, 964-65 (7th Cir. 2000).

Furthermore, this dispute is a core proceeding in which this court can enter final judgment.  "This court agrees with the following courts that ruled that proceedings involving requests to enjoin litigation pursuant to 11 U.S.C. § 105 are core proceedings over which bankruptcy judges have authority to enter final orders: *Walsh v. Abrams* (*In re HBG Servicenter, Inc.*), 45 B.R. 668, 671 (Bankr.E.D.N.Y.1985) and *Baptist Med. Ctr. of New York v. Singh*, 80 B.R. 637, 645 (Bankr.E.D.N.Y.1987)."  *Gander Partners LLC v. Harris Bank N.A.* (*In re Gander Partners LLC*), 432 B.R. 781, 785 (Bankr. N.D. Ill. 2010), *aff'd*, 442 B.R. 883 (N.D. Ill.), *vacated* (Feb. 9, 2011).

Fed. R. Bankr. P. 7001(7) requires proceedings to obtain an injunction or other equitable relief to be brought by adversary proceeding, as was done here.

## III.     BACKGROUND

As stated above, the parties declined the opportunity to hold an evidentiary hearing.  The information in this section is taken from papers filed on the docket, including the Qadris' declarations and the exhibits attached to the Response, as well as from representations made by counsel in court.

### A.  Debtor, Exotic Motors and the Qadris

1600 Hicks Road LLC is an Illinois limited liability company that is owned and managed by Anam and Saleem Qadri, who are brothers.  They are the only owners and managers of the Debtor.  Response, **Exs. 41** (Adv. No. 23 A 16, EOD 9 – Declaration of Saleem Qadri) **and 42** (Adv. No. 23 A 16, EOD 8 – Declaration of Anam Qadri).  The Debtor's main asset is the real property at 1600 Hicks Road in Rolling Meadows, Illinois.  Response, **Ex. 30**.

The Qadris also own and operate Exotic Motors Inc., which is the Debtor's sole tenant. *Id.* and **Exs. 41 and 42**.  As with the Debtor, the Qadris are Exotic Motors' only shareholders and officers.  Response, **Exs. 41 and 42**.  Exotic Motors is a high-end used car dealership located at the real property owned by the Debtor.  The only source of income for the Debtor is rent paid by Exotic Motors. *Id.*

The Qadris' only employment is as officers of Exotic Motors and managers of the Debtor.  They are solely responsible for Exotic Motors' management, each working at least 40 and often as many as 60 hours per week in this role.  Exotic Motors employs a sales manager, who supervises the sales staff, but all decisions regarding strategy, marketing, purchasing

3

inventory and personnel are made by the Qadris.  Without their services, Exotic Motors could not function.  *Id.*

Prior to the bankruptcy filing, management of the Debtor took little time.  Its activities were limited to collecting rent, paying the mortgage and otherwise managing the real estate. During the chapter 11 case, however, the Qadris have spent more time in discussions with attorneys, providing information and documentation, and appearing at meetings and hearings in connection with the case.  *Id.*

### B.  Relationship with EH National Bank

About fifteen years ago, the Debtor and Exotic Motors borrowed two million dollars from the Bank.  Response, **Ex. 4**.  This note was secured by a mortgage against the real property at 1600 Hicks Road in Rolling Meadows, Illinois, as well as an assignment of leases and rents. Response, **Exs. 5 and 6**.  Anam and Saleem each executed an unconditional guarantee of this loan.  Response, **Exs. 7 and 8**.

Exotic Motors paid rent to the Debtor in the amount necessary to cover the mortgage payments Debtor owed to the Bank. According to Debtor's proposed disclosure statement, Case No. 22 B 13205, EOD 42, Exotic Motors was unable to pay rent and taxes in late 2017.  It stopped paying rent and the mortgage fell into default.  It made more sense to the Qadris to create an account receivable for Debtor rather than a large cash fund.

On April 11, 2018, the Bank commenced a proceeding in the Circuit Court of Cook County, seeking to foreclose its mortgage on the property and obtain a money judgment for any deficiency.  Response, **Ex. 9**.  The Bank named the Debtor, Exotic Motors and both Qadris in its complaint.  Motion practice followed, and was continued from time to time partly due to the COVID-19 pandemic.

On June 15, 2021, one day prior to a hearing in state court on motions filed by the Bank, the Debtor filed a voluntary petition for relief under chapter 11.  Case No. 21 B 7478, EOD 1. On November 2, 2021, the Debtor filed a motion to voluntarily dismiss that first bankruptcy case.  *Id.*, EOD 34; Response, **Ex. 15**.

On November 8, 2021, the Bank redeemed the real estate taxes for one parcel of Debtor's real estate.  Sold taxes remained outstanding for a different parcel, with an estimated amount due of $595,958.22.  The redemption period for that second parcel expired on May 2, 2022. Response, **Ex. 17**.

On November 24, 2021, the Bank filed a motion for relief from stay.  Case No. 21 B 7478, EOD 46.  The court granted that motion.  *Id.*, EOD 48.  Shortly thereafter, the U.S. Trustee filed a motion to convert the case to chapter 7.  *Id.*, EOD 54.  On March 24, 2022, the court entered an order dismissing Debtor's first bankruptcy case and imposing a 180-day bar to refiling.  *Id.*, EOD 98.

On February 17, 2022, the state court granted the Bank's motions for summary judgment and to obtain a judgment of foreclosure and sale.  Response, **Ex. 22**.  The judicial sale occurred on March 29, 2022, and the Bank was the sole bidder.  Response, **Ex. 23**.  The Debtor, Exotic Motors and the Qadris objected to the motion for order approving the sale, and the state court vacated the sale on June 17, 2022.

On August 15, 2022, $1,269,500 was deposited into Exotic Motors' account at Bank of America.  Response, **Ex. 25**.

The state court scheduled a second judicial sale.  At that sale on August 22, 2022, an entity named Probidder LLC was the successful bidder with a final bid of $1,280,001.  Response, **Exs. 26 and 27**.  A certificate of sale was issued subject to confirmation of sale, at which time

Probidder will be entitled to a deed.  Response, **Ex. 28**.  Exotic Motors funded Probidder's

purchase.  Complaint, ¶ 18.

As of August 22, 2022, the deficiency amount due to the Bank is $1,597,720.47.

Response, **Ex. 27**.

The Bank filed a motion for order approving the second sale.  An objection was entered,

and the court continued the matter.  Response, **Exs. 10 and 29**.

### C. Debtor files its second bankruptcy case, seeking to reorganize under chapter 11

One day before that continued hearing, Debtor filed this bankruptcy case.  Case No. 22 B

13205, EOD 1.  The Bank filed a motion for relief from stay about a week later, *id.*, EOD 13, and

the court granted it without objection on November 30, 2022, *id.*, EOD 16.

After obtaining stay relief, the Bank returned to state court to request a hearing on its

motion for order approving sale.  The state court entered a briefing schedule and set a further

hearing for March 1, 2023.  Response, **Ex. 36**.  Once the sale is approved, the deficiency amount

will be a liquidated claim against the Debtor.  The Qadris guaranteed the underlying note and so

guaranteed payment of this deficiency claim.

Debtor filed this adversary proceeding, seeking "extension of the automatic stay under 11

USC § 362 an [sic] injunction against a creditor under 11 USC § 105." Complaint, ¶ 2.[1]  Debtor

asks the court to extend the automatic stay and enjoin enforcement of the deficiency judgment

against the Qadris.  The Qadris manage the Debtor and manage and operate Exotic Motors.

Response, p. 2 and **Exs. 41 and 42**.  The Debtor's sole income is from Exotic Motors, which is

---

[1] Within the adversary proceeding, Debtor filed the Motion.  The only relief sought in the Motion is for a
"preliminary injunction against the Defendant to bar it from taking any action to enforce its deficiency judgment
against Anam Qadri and Saleem Qadri, pending resolution of this adversary proceeding[.]"  Motion, p. 2.

accruing rent to the Debtor.  If Exotic Motors is not operating, however, there is no income with which to pay rent.  The parties are working on a new lease; there is not currently a lease in place.

Exotic Motors owes a substantial amount of back rent to the Debtor.  Response, **Ex. 30**. The plan is that "Exotic Motors, having paid the purchaser at the foreclosure sale, once the sale is approved … that certificate of sale will be transferred to the Debtor, and the Debtor will recover ownership of the property."[2]  Debtor will owe Exotic Motors the amount it spent to acquire the real property at 1600 Hicks Road from the foreclosure sale, but that amount will be offset by the very large amount of rent owed by Exotic Motors to the Debtor.

Going forward, "Exotic Motors will pay market rent to 1600 Hicks, and that is what will allow the Debtor to pay the balance … for the purchase, and also pay all of its creditors, including EH National Bank, in full, at 100 percent."  Debtor filed its proposed plan on March 13, 2023.  Case No. 22-13205, EOD 41.  In this plan, Debtor proposes to pay the Bank and all other general unsecured claims in full over a five-year period.  *Id.*

Meanwhile, the U.S. Trustee filed a motion to convert Debtor's bankruptcy case from chapter 11 to chapter 7.  *Id.*, EOD 26.  That same day, the Debtor filed applications to employ counsel and to employ accountants.  *Id.*, EOD 28 and 29.  The court continued the motion to convert and the accountant application, which are both set for hearing on March 22, 2023.

## IV.    DISCUSSION

After Debtor filed and presented the Motion, the court allowed time for the parties to take discovery, for Debtor to file a supplement and for the Bank to file its Response.  Debtor supplemented the Motion with a declaration from each of the Qadris (Adv. No. 23 A 16, EOD 8 – Declaration of Anam Qadri, and EOD 9 – Declaration of Saleem Qadri), and they each

---

[2] This quotation and the following quotation are taken from the oral argument in open court on February 22, 2023.

7

attended a deposition. EH filed its 15-page Response and attached over 600 pages of exhibits. While no party presented testimony, the court heard extensive argument from the Debtor and the Bank. The U.S. Trustee did not take a position on the Motion.

## A. 11 U.S.C. § 362

Section 362 provides debtors an automatic stay of nearly all actions against them, allowing breathing room in which they may reorganize their affairs. The stay benefits creditors as well, eliminating a race to the courthouse and providing a forum in which all parties in interest may participate.

With a limited exception in chapter 12 and 13 cases,[3] the automatic stay does not extend beyond the debtor. "The automatic stay does not apply to guarantors, sureties, insurers, partners, and other persons liable on the debt." *United States v. Wright*, 57 F.3d 561, 562 (7th Cir. 1995). Courts have found that in some instances, it is appropriate to "extend the automatic stay" to other parties. *Charan Trading Corp. v. Uni-Marts, LLC* (*In re Uni-Marts, LLC*), 399 B.R. 400, 416 (Bankr. D. Del. 2009). This is because "[s]uits against the officers or shareholders of corporate debtors will invariably have some effect on the corporate debtor, by for example taking up time and energy of the officer that could otherwise be devoted to the company[.]" *In re Green Scene, Inc.*, No. 10-B-72521, 2010 WL 2465399, at *3 (Bankr. N.D. Ill. June 16, 2010).

> The two exceptions to the rule permitting suits against third parties are closely related. The first is applicable where there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor. The second operates where the pending litigation, though not brought against the debtor, would cause the debtor, the bankruptcy estate, or the reorganization plan irreparable harm.

---

[3] "Except as provided in subsections (b) and (c) of this section, after the order for relief under this chapter, a creditor may not act, or commence or continue any civil action, to collect all or any part of a consumer debt of the debtor from any individual that is liable on such debt with the debtor[.]" 11 U.S.C. §§ 1201(a) and 1301(a).

*Matter of Fernstrom Storage & Van Co.*, 938 F.2d 731, 736 (7th Cir. 1991) (quotations omitted).

*See Fox Valley Const. Workers Fringe Ben. Funds v. Pride of the Fox Masonry & Expert Restorations*, 140 F.3d 661, 666 (7th Cir. 1998) ("The stay, however, protects only the debtor, unless the debtor and some third party have such a similarity of interests that failure to protect the third party will mean that the assets of the debtor itself will fall into jeopardy.")

Although the Complaint nominally requested an extension of the automatic stay and the Debtor confirmed this request at oral argument, in its Motion, directing the court to the "Complaint for Injunction" which "seeks to enjoin Defendant," the Debtor requested only entry of a preliminary injunction. Motion, p. 1. Therefore, the focus of this opinion is on the request for a preliminary injunction.

### B. Preliminary injunctions under 11 U.S.C. § 105

28 U.S.C. § 1334(b) provides that "the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or *related to* cases under title 11." (Emphasis added.) The Seventh Circuit has told us that "in limited circumstances" a trustee or debtor-in-possession may ask the bankruptcy court to enjoin certain claims, "if they are sufficiently '*related to*' claims on behalf of the estate." *Levey v. Sys. Div., Inc.* (*In re Teknek, LLC*), 563 F.3d 639, 648 (7th Cir. 2009) (citation omitted) (emphasis added). To support the bankruptcy court's power to enter such an injunction, 11 U.S.C. § 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

"Though section 105(a) does not give the bankruptcy court carte blanche – the court cannot, for example, take an action prohibited by another provision of the Bankruptcy Code – it grants the

extensive equitable powers that bankruptcy courts need in order to be able to perform their statutory duties." *Caesars Circuit*, 808 F.3d at 1188 (citations omitted).

Section 105 also enables the bankruptcy court to protect its jurisdiction by enjoining, at least temporarily, the prosecution of a third party's action against a non-debtor in another court. That power has long been recognized in the Seventh Circuit. *See Caesars Circuit*, 808 F.3d at 1188-89; *Teknek,* 563 F.3d at 648; *Fisher*, 155 F.3d at 882; *Matter of L & S Indus., Inc.*, 989 F.2d 929, 932 (7th Cir. 1993) ("Accordingly, a bankruptcy court can enjoin proceedings in other courts when it is satisfied that such proceedings would defeat or impair its jurisdiction over the case before it."); *Matter of Energy Co-op., Inc.*, 886 F.2d 921, 929 (7th Cir. 1989) ("The power of the court under this provision also includes the power to issue an injunction enjoining third parties from pursuing actions which are the exclusive property of the debtor estate and are dismissed pursuant to a settlement agreement.").

Bankruptcy courts have often enjoined litigation against a non-debtor, usually but not always a guarantor of the debtor's debts, who intends to contribute financially to the debtor's reorganization. *See In re United Health Care Org.*, 210 B.R. 228, 232 (S.D.N.Y. 1997); *Caesars Ent. Operating Co., Inc. v. BOKF, N.A.* (*In re Caesars Ent. Operating Co., Inc.*), 561 B.R. 441, 450 (Bankr. N.D. Ill. 2016) ("*Caesars Bankruptcy*"); *Saxby's Coffee Worldwide, LLC v. Larson* (*In re Saxby's Coffee Worldwide, LLC*), 440 B.R. 369 (Bankr. E.D. Pa. 2009); *Regency Realty Assocs. v. Howard Fertilizer, Inc.* (*In re Regency Realty Assocs.*), 179 B.R. 717, 719 (Bankr. M.D. Fla. 1995) (calling this the "classic scenario"). *See, e.g., Gander Partners*, 432 B.R. at 788; *Lazarus Burman Assocs. v. Nat'l Westminster Bank USA* (*In re Lazarus Burman Assocs.*), 161 B.R. 891, 898 (Bankr. E.D.N.Y. 1993) ("In many of the cases … the actions against principals were enjoined where their time and energy was important to the rehabilitation of a

debtor's business or to the formulation of a plan of reorganization."); *F.T.L., Inc. v. Crestar Bank* (*In re F.T.L., Inc.*), 152 B.R. 61 (Bankr. E.D. Va. 1993); *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting* (*In re Kham & Nate's Shoes No. 2, Inc.*), 97 B.R. 420, 428-29 (Bankr. N.D. Ill. 1989); *In re Monroe Well Serv., Inc.*, 67 B.R. 746, 751 (Bankr. E.D. Pa. 1986); *Rustic Mfg., Inc. v. Marine Bank Dane County* (*Matter of Rustic Mfg., Inc.*), 55 B.R. 25, 31 (Bankr. W.D. Wis. 1985) ("Numerous courts have held that actions against corporate debtors' guarantors in state court can cause irreparable harm."); *Lahman Mfg. Co., Inc. v. First Nat'l Bank of Aberdeen* (*In re Lahman Mfg. Co., Inc.*), 33 B.R. 681 (Bankr. D.S.D. 1983); *Otero Mills, Inc. v. Security Bank & Trust* (*In re Otero Mills, Inc.*), 21 B.R. 777 (Bankr. D.N.M.), *aff'd*, 25 B.R. 1018 (D.N.M. 1982).  *See also Fisher*, 155 F.3d at 883 (stay pending outcome of bankruptcy case); *Bank of the West v. Fabtech Indus., Inc.* (*In re Fabtech Indus., Inc.*), Adv. No. 10-1294-BB, 2010 WL 6452908 (B.A.P. 9th Cir. July 19, 2010) (affirming bankruptcy court's extension of injunction pausing guaranty litigation until the date scheduled for debtor's plan confirmation).

The financial fate of Debtor and Exotic Motors and the principals of both of those entities are inextricably entwined.  Exotic Motors has leased from Debtor the property on which it operates, and for years it paid rent in the form of making mortgage payments on Debtor's behalf. When the Bank stopped accepting mortgage payments, Exotic Motors stopped making payments but still accrued rent to Debtor.

As counsel stated at argument, and as described in Debtor's Schedule B, Exotic Motors owes a substantial amount of back rent to the Debtor.  Response, **Ex. 30**.  The plan is that once the foreclosure sale is approved, the certificate of sale will be transferred to the Debtor.  Debtor will owe Exotic Motors the amount it spent to acquire the real property, and that amount will be offset by the rent Exotic Motors owes to the Debtor.  The parties will enter into a new lease, and

11

Exotic Motors will pay market rent to the Debtor.  This will allow Debtor to pay its creditors

through a plan of reorganization.  If Exotic Motors' operations are impacted because the Qadris

are defending the litigation over their guarantees, this will impact whether funds are available for

Exotic Motors to pay rent to the Debtor.

1.  **Elements of a preliminary injunction**

> To obtain an injunction under section 105(a), it is unnecessary to satisfy the
> traditional elements for injunctive relief. *Fisher v. Apostolou*, 155 F.3d 876, 882
> (7th Cir. 1998). As long as the third-party litigation would " 'defeat or impair' "
> the bankruptcy court's " 'jurisdiction over the case before it,' " the debtor need
> show only that (1) there is a " 'likelihood of success on the merits,' " *id.* (quoting
> *In re L & S*, 989 F.2d 929, 932 (7th Cir. 1993)), which in this context means the
> likelihood of a successful reorganization, *In re Excel Innovations*, 502 F.3d 1086,
> 1095 (9th Cir. 2007); *Lyondell Chem. Co. v. CenterPoint Energy Gas Servs. Inc.*
> (*In re Lyondell Chem. Co.*), 402 B.R. 571, 588–89 (Bankr. S.D.N.Y. 2009); and
> (2) the injunction would serve the public interest, *Fisher*, 155 F.3d at 882. The
> debtor need not show irreparable harm or an inadequate remedy at law. *Id.*

*Caesars Bankruptcy*, 561 B.R. at 450.  *See Maxwell v. Megliola* (*In re marchFIRST, Inc.*), 288

B.R. 526, 530 (Bankr. N.D. Ill. 2002), *aff'd*, 293 B.R. 443 (N.D. Ill. 2003) ("[T]he Seventh

Circuit does not require the court to evaluate the four factors that are usually considered in the

decision to issue an injunction….  The moving party must still establish a likelihood of success

on the merits. And the public interest must always be considered on an injunction motion.")

(citation omitted).

It is the Plaintiff's burden of proof to establish, by a preponderance of the evidence, the

elements required for entry of a preliminary injunction.  *See 3M Occupational Safety LLC v.*

*Those Parties Listed on Appendix a to the Complaint* (*In re Aearo Techs. LLC*), 642 B.R. 891,

907 (Bankr. S.D. Ind. 2022).

12

### a. Likelihood of success on the merits, which in this context means the likelihood of a successful reorganization

Courts have acknowledged that "it is not a high burden to show a reasonable likelihood of success in reorganization[.]" *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1097 (9th Cir. 2007). *See Bestwall LLC v. Those Parties Listed on Appendix A to Complaint (In re Bestwall LLC)*, 606 B.R. 243, 254 (Bankr. W.D.N.C. 2019), *aff'd*, No. 3:20-CV-105-RJC, 2022 WL 68763 (W.D.N.C. Jan. 6, 2022) ("Establishing that a reorganization is likely to be successful is not intended to be a particularly high standard.").

Certainly, there may be opposition to Debtor's proposed plan. Such is the nature of the adversarial process. But a contested reorganization process does not necessarily lead to an inability to achieve a successful reorganization. Quite the opposite. The Bankruptcy Code anticipates disputed matters during the reorganization process, but promotes negotiation, compromise and settlement of claims. "Chapter 11 is intended to permit business debtors to reorganize and restructure their debts in order to revive the debtors' businesses." *In re A & F Enterprises, Inc. II*, 742 F.3d 763, 769 (7th Cir. 2014) (quotation omitted). If an injunction will further that purpose, and the required elements are present, it is appropriate to enjoin the actions that threaten the reorganization. *See Pacific Alliance Asia Opportunity Fund L.P. v. Kwok* (*In re Kwok*), No. 22-50073 (JAM), 2023 WL 186964, at *19 (Bankr. D. Conn. Jan. 13, 2023) ("If the actions that are enjoined were allowed to continue, the ability to successfully reorganize … will be greatly diminished.").

The Bankruptcy Code is not available only to provide a fresh start to individuals, but to business entities as well. Debtors are persons, and the Code defines a "person" as including an "individual, partnership, and corporation[.]" 11 U.S.C. § 101(41). Corporate entities, including limited liability companies that own a single piece of real estate, are given the right to utilize the

13

Bankruptcy Code and to present a plan of reorganization.  Each business case affects more than one person and one creditor.  There are many constituencies affected by a business bankruptcy case, including owners, vendors, customers, tenants, taxing bodies, general creditors and governmental units.

In this case, Exotic Motors has already funded the purchase of the real property at the foreclosure sale, borrowing a significant amount of money to do so.  During oral argument, counsel for the Debtor outlined the terms of a potential plan of reorganization.  No matter that it was not yet on file at the time of hearing; no deadline has been entered on the docket or imposed by statute.  In fact, Debtor did file a plan on March 13, 2023.

The Bankruptcy Code allows debtors time to stabilize, formulate, negotiate and propose their plans.  This case was filed on November 14, 2022.  For the first 120 days of a chapter 11 case, "only the debtor may file a plan[.]"  11 U.S.C. § 1121(b).  Chapter 11 debtors have another sixty days to exclusively solicit acceptances of their plan from impaired classes.  11 U.S.C. § 1121(c)(3).  Moreover, the Code contemplates extensions of this exclusivity period for plan proposals, up to 18 months from the petition date. 11 U.S.C. § 1121(d)(2)(A).  These deadlines are different in a small business case, but this case does not fall into that category.  While stay relief may be granted when a single asset real estate debtor such as Plaintiff has not filed a plan within 90 days from the petition date, 11 U.S.C. § 362(d)(3), that deadline is irrelevant here.  The Bank already obtained relief from the stay, and the court is not considering any other party's request for stay relief.  Moreover, Debtor's plan is now on file.

The Bank has raised objections to Debtor's proposal and may continue to pursue these objections more formally now that a plan is on file.  But Congress codified chapter 11 in order to permit debtors to resolve disputes with their creditors in an orderly, organized fashion.  One of

14

the purposes of chapter 11 is to provide debtors the breathing space to formulate a plan and to seek confirmation of that plan. The nature of this relief presumes there will be disagreements about whether there will be a resolution among the parties in interest and how it can best be accomplished, but debtors deserve the opportunity to make the attempt. In this situation, the principals of the Debtor have put their money on the line and outlined the parameters of a potential reorganization. The court finds that Debtor has satisfied the not particularly high standard of a "reasonable likelihood of success in reorganization[.]" *Excel Innovations*, 502 F.3d at 1097.

### b. Whether the injunction would serve the public interest

Successful reorganizations are in the public interest. They allow parties the opportunity to formulate a plan of reorganization and to achieve a consensual resolution among competing interests. In this case, it is in the public interest to maintain the business that operates on the Debtor's real property, a business that employs not just the Debtor's principals but also a sales manager and sales team. The proposed result of a reorganization would benefit all parties in interest – paying the Bank in full and relieving the principals of the obligation of their guaranty. It would also result in payment of the real estate taxes.

The unpaid real estate taxes are a significant issue that must be addressed. Resolving this obligation is also in the public interest. Unpaid real estate taxes are part of a meaningful percentage of bankruptcy cases in the Northern District of Illinois. Government agencies as well as the public receive a benefit from debtors who pay their real estate taxes through a plan of reorganization.

For all of these reasons, Debtor has satisfied the requirement that entry of an injunction would serve the public interest.

### c. Irreparable harm

Case law does not require the Debtor to show that failure to enjoin the Bank from pursuing its deficiency judgment against the Qadris would result in irreparable harm. However, it does exist here. If the court does not impose an injunction that protects the Qadris from litigation while this bankruptcy case proceeds to confirmation, the Debtor's ability to take its proposed plan to confirmation is hindered. The Qadris may lose the ability to fund a plan. *See Caesars Circuit*, 808 F.3d at 1189 ("If before [Debtor's] bankruptcy is wound up [the owner] is drained of capital by the lenders' suits to enforce the guaranties…there will be that much less money for [Debtor's] creditors to recover in the bankruptcy proceeding."). Without a plan, the loss of the real property at 1600 Hicks Road is inevitable, affecting Exotic Motors, its employees and customers.

Additionally, the Bank would suffer little harm from a delay. Any deficiency judgment from the foreclosure sale is an unsecured claim against the Qadris. If the Debtor is permitted to take its proposed plan to confirmation, that claim will be treated in the plan. But if the Qadris' attention is diverted by defending litigation seeking to recover on their guarantees, there are less funds for the estate and for any plan of reorganization. *See id*.

### d. Plaintiff has an inadequate remedy at law

Although Debtor is not required to demonstrate that it has an inadequate remedy at law before the court will issue an injunction, this element is satisfied as well. Once critical pieces of the reorganization puzzle are lost, the process cannot continue to a successful completion. It would be difficult to calculate or quantify the damages if Debtor loses the opportunity to reorganize.

16

## 2. The Bank's arguments do not compel a different result

### a. "Strong showing" is not required

In section 2.1 of the Response, the Bank argues that Debtor must make a "'strong showing' that it is likely to succeed on the merits by demonstrating how it 'proposes to prove the key elements of its case.'" Response, p. 10 (quoting *Ill. Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020)). The Bank admits that in the Complaint, Debtor has claimed a "likelihood of success[.]" In fact, that "reasonable likelihood" is all the case law requires of Debtor. As described above in section IV(B)(1)(a), "it is not a high burden to show a reasonable likelihood of success in reorganization[.]"*Excel Innovations*, 502 F.3d at 1097. In fact, while the *Pritzker* case used the phrase "strong showing," it clarified that "[a] 'strong' showing … does not mean proof by a preponderance—once again, that would spill too far into the ultimate merits for something designed to protect both the parties and the process while the case is pending. But it normally includes a demonstration of how the applicant proposes to prove the key elements of its case." 973 F.3d at 763. That is all the Debtor must do, and it has cleared this hurdle.

### b. Debtor does not need to establish unusual circumstances

The Bank also argues that an injunction "under § 105 of the Bankruptcy Code is warranted only in the presence of 'unusual circumstances.'" Response, p. 11. This reliance on the existence of "unusual circumstances" is misplaced; decisions that impose this requirement do so in the context of deciding whether or not to extend the automatic stay.

> This prohibition [against extending the automatic stay], however, has been liberalized in a number of cases where courts have applied the automatic stay protection to nondebtor third parties. Relying on *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986), these courts have extended the automatic stay to nonbankrupt codefendants in "unusual circumstances."

17

*McCartney v. Integra Nat. Bank N.*, 106 F.3d 506, 510 (3d Cir. 1997).  *See Uni-Marts*, 399 B.R.

at 416 ("courts may extend the automatic stay to non-debtor third-parties if 'unusual

circumstances' are present"); *Green Scene*, 2010 WL 2465399, at *3 ("[a] court will only extend

the automatic stay "if 'unusual circumstances' are present") (quotation omitted).

Here, the Debtor, in its Complaint, requests that the automatic stay be extended to the

Qadris, but does not request immediate relief in its Motion.  Extension of the automatic stay,

therefore, will be addressed in the adversary proceeding litigation.

### c. There is a reasonable possibility of a successful reorganization

Next, the Bank contends that there is no possibility of a successful reorganization.

Debtor is a single asset real estate business, and its only asset was sold at a judicial sale.  Debtor

has not collected rent from its tenant in years and does not have a written lease with that tenant –

"[a]ccordingly, there is nothing to operate and nothing to reorganize."  Response, p. 13.

As the court described above, however, Debtor does have a roadmap for an exit from

chapter 11.  The concept around which the plan is built is that the foreclosure sale purchaser will

transfer the certificate of sale to the Debtor.  While Debtor will owe Exotic Motors the amount it

spent to acquire that real property from the foreclosure sale, that debt will be offset by the

substantial amount of back rent owed by Exotic Motors to the Debtor.  Going forward, Exotic

Motors will pay rent to the Debtor, and that will allow the Debtor to pay all of its creditors,

including the Bank, in full through its proposed plan of reorganization.

### d. Debtor has shown irreparable harm if the court does not issue an injunction

In section 2.2 of the Response the Bank argues that the Debtor has not shown and cannot

demonstrate irreparable harm.  If the Qadris' attention is diverted by outside litigation, and

18

Exotic Motors is unable to pay rent, "the Debtor will remain in the exact same position it is in currently with no property, no written lease, and no rents." Response, p. 13 (citations omitted).

While this statement is accurate, it only describes the Debtor's *current* situation. The irreparable harm would come from the lost opportunity to reorganize the Debtor *in the future*.

The Bank also argues that the allegation of irreparable harm lacks credibility because the Qadris have defended themselves, Exotic Motors and the Debtor through years of litigation and at the same time managed Exotic Motors' operations. However, trying to save the Debtor's real property is a different proposition than defending oneself in guaranty litigation. And, it ignores the consequences of harm suffered if EH later is proven wrong. Without an injunction, the Debtor may lose critical pieces of its proposed plan and the likelihood that the Debtor can achieve a successful reorganization is endangered. Once critical pieces are lost, the puzzle cannot be put back together – the harm is irreparable.

### e. Issuance of an injunction is in the public interest

Finally, EH contends that the Qadris have abused the court system by not disclosing their relationship with the bidder at the foreclosure sale, and acted in bad faith by causing the Debtor to file for relief under the Bankruptcy Code twice in order to resolve a two-party dispute. Therefore, the public interest supports the denial of Debtor's request.

First, any past problems are not relevant to whether an injunction should issue going forward. Every debtor enters bankruptcy having had disputes with its creditors. Such disputes may be relevant to an objection to confirmation, motion to dismiss or other motion practice. Nevertheless, chapter 11 debtors deserve a chance at reorganization, especially when there would be minimal harm to the Bank but irreversible harm to the Debtor, its officers and its tenant.

19

The Bank argues that because of 'past sins' we should presume that the Debtor cannot succeed.  For example, the Bank alleges that the Qadris improperly used an SBA loan to fund Probidder's purchase at the second foreclosure sale, although there is no evidence for the court to find that this use was improper.[4]  The Bank also asserts that the Debtor should not be given any extra tools with which it can create a path to reorganization.  However, the Debtor has shown the court the parameters and framework of a plan and a path forward.[5]

Although the exclusivity period is not particularly long, it represents a decision by the Code's drafters to provide debtors with breathing space to present a plan of reorganization.  In this case, the Debtor has a plan on file without ever having requested even one extension of the exclusivity period.  Denial of the injunction would endanger Debtor's potential success.

Furthermore, as the court stated above, successful reorganizations are in the public interest.  They allow parties the opportunity to formulate a plan of reorganization, achieve a consensual resolution, preserve value for creditors, maintain a business and continue to pay employees and vendors – all of which is in the public interest.  "In the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests." *Rehabworks, Inc. v. Lee* (*In re Integrated Health Servs., Inc.*), 281 B.R. 231, 239 (Bankr. D. Del. 2002).  *See Lazarus*, 161 B.R. at 901 ("The public interest, in the context of a bankruptcy proceeding, is in promoting a successful reorganization.").

Debtor may not be a blue-chip Fortune 500 company seeking to protect its directors and officers.  But it is just as important – if not more – to protect the ability of a small business, like the Debtor, to reorganize.

---

[4] The bank statement attached as Exhibit 25 to the Response shows a deposit in the amount of $1,269,500 on August 15, 2022, but no further details, including any restrictions on its use.

[5] Likewise, the Debtor asserts questionable conduct by the Bank.  Allegations by both parties have not yet been proven or defended.  Confirmation may bring resolution to some of the issues.

## V.    CONCLUSION

The fate of Exotic Motors is entwined with the Debtor's.  If the court declined to enter the requested injunction, this would jeopardize the rent available to fund the Debtor's reorganization.  If the Debtor is unable to reorganize, the real property is not available for Exotic Motors to operate.  Entering a preliminary injunction that pauses the collection of the deficiency judgment while the Debtor is in the process of reorganizing provides a benefit to all.  It promotes an overall settlement.

The balance of equities heavily favors granting the Debtor's motion.  Without an injunction, the Debtor stands to suffer very real harm.  The Bank will be delayed in its collection efforts, but only until the date of Debtor's confirmation hearing.  In this sense, it is no different from any other creditor that participates in a chapter 11 case, taking the good – the promise of a stronger, reorganized debtor with the ability to pay claims – with the bad.

For all of the reasons stated above, **IT IS HEREBY ORDERED THAT** the Debtor's Motion is **GRANTED**.  The record demonstrates that an injunction is likely to enhance the prospects for a successful reorganization and will serve the public interest.  Proceedings and collection actions by the Bank against Anam Qadri and Saleem Qadri will be enjoined as described herein.

ENTERED:

Date:  March 17, 2023

_____
DAVID D. CLEARY
United States Bankruptcy Judge

21